**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD HIGGINS & | ) | |
| ALEXANDER GARESCHE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.  22 C 4563 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| VILLAGE OF LYONS, THOMAS HERION, | ) | |
| OFFICER J. BARAJAS, OFFICER P. | ) | |
| FRENCL, LYONS JOHN DOE OFFICERS, | ) | |
| PARAMEDIC JOSH, & LYONS FIRE DEPT. | ) | |
| JOHN DOES, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The motion to dismiss for failure to state a claim filed by Defendants Officer J. Barajas, Thomas Herion, and the Village of Lyons is denied for the reasons stated below.

**BACKGROUND**

Plaintiffs allege that, on August 28, 2021, Village of Lyons Police Officers J. Barajas and P. Frencl, along with unknown other officers, paramedics, and fire department personnel, were investigating a discovery of human remains within the Village of Lyons, "a newsworthy event." (Compl., ECF No. 1, ¶¶ 11, 12.)  Plaintiff Edward Higgins, accompanied by his friend, Plaintiff Alexander Garesche, was about one block away "in an open area they were lawfully allowed to stand in," while Higgins, "acting lawfully and with FAA authorization and credentials," operated a drone to obtain overhead images "of the investigation site." (*Id*. ¶¶ 13-15.)  Although "Plaintiffs had committed no crime," police officers detained and arrested Higgins and Garesche.  Barajas fastened them into "excessively and unreasonably tight[]" handcuffs despite their complaints of pain and Garesche's pre-existing shoulder injury, about which he told Barajas.  Higgins also notified Barajas of his "poor heart," but Barajas nevertheless put the handcuffed Plaintiffs in an unventilated and non-airconditioned Lyons police vehicle for fifteen minutes while the outdoor temperature was over 90 degrees Fahrenheit.  Plaintiffs fruitlessly "banged their heads against the windows" to call the observing officials' attention to the heat. (*Id*. ¶¶ 19-21, 23-31.)  Plaintiffs were then driven to the Village of Lyons Police Department, where "they were given ordinance violation tickets for disorderly conduct." (*Id*. ¶¶ 33-37.)  At the court date on October 26, 2021, Plaintiffs appeared pro se, and Village of Lyons Police Chief Thomas Herion, while testifying, insisted that he wanted the disorderly conduct violation dismissed and replaced with a misdemeanor obstruction charge. (*Id*. ¶¶ 39-42.)  After a mid-hearing dispute with the prosecutor, Chief Herion convinced the prosecutor to drop the ordinance violation charges and had the

Plaintiffs arrested and taken to the police station lockup, where he "yelled at them[,]" Plaintiffs understood, for "put[ting] on a defense to the citations." (*Id.* ¶¶ 43-52.) Plaintiffs were charged with misdemeanor disorderly conduct and hired attorneys, who successfully moved to dismiss those charges on grounds of double jeopardy, vindictive prosecution, and failure to state an offense. (*Id.* ¶¶ 53-55.)

In this ensuing lawsuit, Plaintiffs name as Defendants Chief Herion, Officers Barajas and Frencl, the Village of Lyons, and unknown police officers, paramedics and fire department personnel.[1] Plaintiffs raise the following claims against the police officers and other personnel present at the scene Higgins was filming: false arrest/failure to intervene (Count I, § 1983); unreasonable conditions of seizure (Count II, § 1983); and unlawful prosecution (Count III, § 1983; Count V, state law). Plaintiffs both allege negligence and/or willful and wanton conduct against the Village of Lyons (Count VI, state law). Higgins raises an additional claim against Chief Herion for unlawful restriction of speech because Chief Herion "directed and/or encouraged and/or ordered the arrest and prosecution of Higgins with the objective of preventing him from exercising his right to free expression and/or with the object of punishing him for exercising his right to free expression to film a newsworthy event and then publish that event to the larger public" (Count IV, § 1983).

Chief Herion, Officer Barajas,[2] and the Village of Lyons (hereafter, jointly referred to as "Defendants") move to dismiss Plaintiffs' federal claims and malicious prosecution claim (Counts I-V) pursuant to Federal Rule of Civil Procedure 12(b)(6); they further ask that the Court relinquish jurisdiction over the state-law claim (Count VI) that would remain. (ECF No. 17, Defs.' Mot. Dismiss.)

## STANDARD

A court addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citing *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016)). "To survive a motion to dismiss, the allegations in the complaint 'must plausibly suggest . . . a right to relief, raising the possibility above a speculative level,' . . ., and give the defendant fair notice of what claim the plaintiff is making and what the basis for that claim is[.]" *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020) (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires merely "a short and plain statement," *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006), with just enough "factual content" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Plaintiffs originally also named as Defendants Cook County, Cook County Sheriff Dart, and unidentified Cook County Sheriff's Officers and employees but dismissed those Defendants on January 20, 2023. (ECF No. 34, 35.) Plaintiffs' indemnification claim (erroneously listed as a second Count VI) targeted only the since-dismissed Cook County.

[2] Officer Frencl, who is represented by different counsel, has answered the complaint; no other officers have yet been identified and named as Defendants.

alleged," *Kap Holdings*, 55 F.4th at 524 (internal quotation marks and citation omitted). The motion may be granted, though, "if a plaintiff pleads facts which show he has no claim" or "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McCready*, 453 F.3d at 888 (citations and internal quotation marks omitted).

## DISCUSSION

Defendants move to dismiss Counts I, III, IV, and V, on the ground that the false arrest, retaliatory arrest, and unlawful prosecution claims are barred because officers had probable cause to arrest Plaintiffs. They also argue that qualified immunity protects them against Plaintiffs' claims of false arrest, retaliatory arrest, and unreasonable seizure in Counts I-III because Plaintiffs' allegations do not indicate that their clearly established rights were violated by Defendants' conduct.

### 1. Probable Cause to Arrest and Prosecute

Defendants move to dismiss Counts I, III, IV, and V, on the ground that they had "probable cause to arrest and prosecute" Plaintiffs, which they assert defeats those claims. (ECF No. 17 at 8.)

### a. Counts I (False Arrest) and IV (Retaliatory Arrest)

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. "[T]he reasonableness of an arrest or other seizure under the Fourth Amendment depends . . . on *when* it is made [and] *how* it is made[.]" *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 724 (7th Cir. 2013) (emphasis in original). A seizure occurs when one's "freedom of movement is terminated or restrained by intentionally applied force or submission to an assertion of authority." *Id.* at 719 (citations omitted). "Ordinarily seizures are 'reasonable' only when supported by probable cause to believe an individual has committed a crime." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). Probable cause thus "is an absolute defense to any § 1983 claim against a police officer for false arrest[,] false imprisonment," *Abbott*, 705 F.3d at 713-14, or retaliatory arrest, *Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019).

"The existence of probable cause . . . depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law[,]" but "an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Abbott*, 705 F.3d at 715. The "common-sense inquiry" for probable cause "requir[es] only a probability of criminal activity[,]" which "exists whenever an officer . . . has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chi.*, 987 F.3d 641, 644 (7th Cir. 2021) (quotation marks and citations omitted). The officer's belief must be "'reasonable,'" not "'correct or even more likely true than false.'" *Gaddis v. DeMattei*, 30 F.4th 625, 630-31 (7th Cir. 2022) (quoting *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879 (7th Cir. 2012)).

That Plaintiffs were seized is uncontested for present purposes, but Defendants argue that, at the time of the seizures, they had probable cause to arrest Plaintiffs for disorderly conduct, which "is described as an individual doing 'any act in such unreasonable manner as to alarm or disturb another and provoke a breach of the peace.'" (ECF No. 17 at 9-10 (quoting *Gaddis*, 30 F.4th at 631; 720 ILCS 5/26-1(a)(1)).) Defendants in essence contend that Plaintiffs have pleaded themselves out of court—they assert that flying a drone "into a crime scene investigation concerning human remains discovered in a backyard of a private residence" to take "photographs" to "distribute[] to news media" provides probable cause for an arrest because the Seventh Circuit has observed that, "[c]ertainly, a person can photograph and videotape in a sufficiently disruptive way that it would not be unconstitutional to arrest the individual for disorderly conduct." (*Id*. at 10 (quoting *Spiegel v. McClintic*, 916 F.3d 611, 618 (7th Cir. 2019).)

Plaintiffs respond that the allegations of the complaint do not suggest disruptive conduct or any breach of the peace by Higgins and that Garesche is alleged merely to have been standing near Higgins, such that any probable cause to arrest Higgins would not necessarily automatically extend to Garesche. (ECF No. 29, Pls.' Resp. Mot. Dismiss, at 7-12.)

Construing the complaint in the light most favorable to Plaintiffs, with all reasonable inferences in their favor, Plaintiffs have not pleaded themselves out of court on the issue of probable cause. Plaintiffs' factual allegations indicate that neither their physical location nor Higgins' act of flying a drone were inherently unlawful. That Higgins guided the drone over and captured images of a crime scene on private property is insufficient, without more, to indicate that officers could reasonably have believed that his conduct (or Garesche's) was disorderly, i.e., that either was acting "in such an unreasonable manner as to alarm or disturb another and provoke a breach of the peace." *See Gaddis*, 30 F.4th at 631 (affirming summary judgment because the arresting officer "could have reasonably believed probable cause existed to arrest [arrestee] for disorderly conduct" where the undisputed facts showed a report of a disturbance and arrestee's increasing aggression that posed a potential risk to others). The Seventh Circuit's bare posit (in the context of an otherwise inapposite facial challenge to a Wilmette, Illinois ordinance) that a disruptive recording *could be* sufficiently disruptive to qualify as disorderly conduct, *Spiegel*, 916 F.3d at 618, does not otherwise indicate that officers would reasonably have believed that Plaintiffs' conduct, here, constituted disorderly conduct.

Defendants ultimately may be able to establish that they reasonably believed that they had probable cause to arrest one or both of the Plaintiffs, but their motion on that ground is premature and is denied. *See Jordan v. Bonano*, No. 22 C 725, 2022 WL 13916597, at *4 (N.D. Ill. Oct. 24, 2022) (denying motion to dismiss unlawful seizure claim where Plaintiff "plausibly alleged facts that suggest that the Troopers 'consciously disregard[ed] information' that would have clarified the situation and negated probable cause") (quoting *Dean v. City of Chi.*, 896 F. Supp. 2d 699, 704 (N.D. Ill. 2012)); *Romando v. City of Naperville*, No. 20 C 2701, 2021 WL 1853304, at *3 (N.D. Ill. May 10, 2021) (deeming it "too early to determine the issue" of probable cause, where plaintiff alleged she had not committed the crimes or acts of which she was accused); *Frobe v. Vill. of Lindenhurst*, No. 11 C 1722, 2014 WL 902878, at *4 (N.D. Ill. Mar. 7, 2014) (denying motion to dismiss false arrest claim because, read "in the light most favorable to" the plaintiff, his allegations "adequately denied that he was speeding").

b. **Counts III (*Manuel* Unlawful Prosecution) and V (State-Law Malicious Prosecution)**

Defendants next conclusorily assert that the probable cause that they contend existed for Plaintiffs' seizures also defeats their claims for unlawful prosecution in Counts III[3] and V. Setting aside that such claims typically address probable cause after (rather than during) an initial seizure, *see Manuel v. City of Joliet*, 580 U.S. 357, 370, 368-69 (2017); *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016), the Court's rejection of the premise that Plaintiffs pleaded probable cause for their seizures clears the way for them to proceed on Counts III and V.

2. **Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity as to Plaintiffs' federal claims in Counts I-IV. "Governmental actors performing discretionary functions are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott*, 705 F.3d at 713 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

Although qualified immunity is meant to guard its beneficiaries as much as possible against the costs of discovery and trial, it is rarely appropriately resolved at the motion-to-dismiss stage. *See, e.g., Hanson v. LeVan*, 967 F.3d 584, 589-90 (7th Cir. 2020) (explaining that dismissal under Rule 12(b)(6) "is [not] always (if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim"). "[B]y raising the defense at the motion-to-dismiss stage rather than at summary judgment," defendants "assume[] [a] more challenging standard."[4] *Sayed v. Virginia*, 744 F. App'x 542, 546 (10th Cir. 2018); *see also Reed v. Palmer*, 906 F.3d 540, 548-49 (7th Cir. 2018) (same) (citations omitted). At the motion-to-dismiss stage, "'it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness."'" *Reed*, 906 F.3d at 548-49 (emphasis in original) (quoting and citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)); *see also Hanson*, 967 F.3d at 596 ("[B]ecause we are at the 12(b)(6) stage, the plaintiffs receive the benefit of all plausible allegations and reasonable inferences being treated as true," so that "the set of contextual facts that are assumed for purposes of this qualified-immunity inquiry [are] broad[.]").

---

[3] Plaintiffs root their claim in their "subject[ion] to the restrictions of and obligations imposed by the [c]ourts on persons released on bond." (ECF No. 1 ¶ 70); *see Artman v. Gualandri*, No. 20 C 4501, 2021 WL 2254961, at *4 (N.D. Ill. June 3, 2021).

[4] Defendants refer to the proper motion-to-dismiss standard in their opening brief but in their reply improperly rely on the burden-shifting analysis that would be appropriate for summary judgment briefing. (Defs.' Reply, ECF No. 31, at 3); *see Sayed*, 744 F. App'x at 546 ("The flaw in this argument . . . is that it employs the summary judgment standard for analyzing the qualified immunity defense.").

### a. Counts I (False Arrest), III (*Manuel*), IV (Retaliatory Arrest)

Defendants argue that they are entitled to qualified immunity on Plaintiffs' unreasonable and retaliatory seizure claims and *Manuel* unlawful prosecution claim because Plaintiffs had no "clearly established constitutional right to fly a drone over a crime scene investigation and photograph human remains." (ECF No. 17 at 4-7.) Plaintiffs dispute Defendants' characterization of the right at issue, identifying the apt issue as "whether the Defendants reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest a plaintiff[.]'" (*See* ECF No. 29 at 9 (quoting *Hoeppner v. Billeb*, No. 17-cv-430-bbc, 2018 WL 5282898, at \*10 (W.D. Wis. Oct. 23, 2018)).)

The Court agrees that Defendants have fatally (for the purposes of their motion to dismiss) misidentified the right at issue. Whether Higgins had a clearly established right to use his drone as he did does not answer whether both Plaintiffs' seizures and prosecutions are constitutionally infirm as Plaintiffs allege in Counts I, III, and IV. In other words, even if Higgins had no "right" to fly the drone as he did, it does not necessarily follow that Higgins' particular drone usage rendered both his and Garesche's seizures and prosecutions reasonable. *See, e.g., Pierner-Lytge v. Hobbs*, 601 F. Supp. 3d 404, 411-12 (E.D. Wis. May 5, 2022) (in qualified-immunity analysis on false-arrest claim, addressing not whether the arrestee had a right to be in the park with a bayonet but whether the officers reasonably could have believed that plaintiff violated the Wisconsin disorderly-conduct law by being in the park with a bayonet); *Brown v. Robinett*, No. 119CV02336SEBMJD, 2021 WL 663378, at \*9-10 (S.D. Ind. Feb. 19, 2021) (in qualified-immunity analysis as to retaliatory-arrest claim, addressing not whether plaintiff was properly exercising a right to record police activity but whether "the officer had arguable probable cause for the arrest"). !

Because Defendants did not correctly frame the issue, their analysis is flawed and does not demonstrate that the officers "did not violate a clearly established right" of Plaintiffs through their arrests and prosecutions as alleged in Counts I, III and IV. They also assume without factual predicate in the complaint that the officers merely took "reasonable steps" "to secure a crime scene" or "protect the integrity and confidentiality of the investigation." (ECF No. 17 at 7.) These considerations, like most qualified-immunity determinations, require fact-specific analyses particularly inappropriate for resolution before summary judgment,[5] *see Hanson*, 967 F.3d at 597 ("[Defendant]'s disagreement with the assumed context here illustrates the mismatch between the 12(b)(6) plausibility standard and the often fact-intensive nature of qualified-immunity inquiries."). Accordingly, in light of Defendants' incorrect framing of the issue and the standard applicable to the motion to dismiss, Defendants' motion to dismiss Counts I, III, and IV on the ground of qualified immunity is denied.

---

[5] Defendants argue that federal and state laws, regulations, and cases demonstrate that Plaintiffs lacked the "right" to film a crime scene with a drone, but they do not develop a probable-cause (or arguable probable-cause) analysis as to those laws, regulations, and cases to suggest that the officers might have acted reasonably in arresting or causing the prosecution of both Plaintiffs under those laws, regulations, or statutes.

### b.  Count II (Unreasonable Conditions of Seizure)

Defendants finally argue that the post-arrest conditions Plaintiffs challenge could not constitute a violation of their rights.  (ECF No. 17 at 7-8 ("Defendants did not violate any clearly established constitutional right by placing Defendants [sic] in a squad car for a short duration on a warm day.").)  Plaintiffs argue that "excessive handcuffing and the purposeful placement of Plaintiffs in an extremely hot, unventilated car, especially given Plaintiffs' physical infirmities" was unreasonable.  (ECF No. 29 at 13-15.)

The manner in which a seizure is effected must be reasonable.  *See Sides v. Champaign*, 496 F.3d 820, 827-28 (7th Cir. 2007) ("The governing standard [for claims regarding officers' alleged inattention to serious medical needs during arrest] is the Fourth Amendment's ban on unreasonable seizures.") (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).  "[T]he Constitution does not require arrests to be conducted in comfort," *id.* at 828, and permits "[a]n officer *who has the right to arrest an individual . . . to use some degree of physical force* or threat to effectuate the arrest," *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (emphasis added) (citing *Graham*, 490 U.S. at 396).  That said, if it is "clear from the nature of the act itself" that it "will cause pain or injury" or it "become[s] clear to an arresting officer, that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest," the "officer's otherwise reasonable conduct may be objectively unreasonable."  *Id.* at 772.  This determination depends on what the officers "knew at the time of the incident."  *Howell v. Smith*, 853 F.3d 892, 899 (7th Cir. 2017); *see Kapernekas v. Vill. of Stone Park*, No. 17 C 6040, 2019 WL 1543261, at *3-4 (N.D. Ill. Apr. 9, 2019) (analyzing the totality of the circumstances by considering factors such as the age of arrestee, officers' knowledge, and the conditions and length of the challenged confinement).

Plaintiffs allege that they told the officers of preexisting health conditions, including a shoulder injury and "poor heart," before they were overly-tightly handcuffed, then placed in an unairconditioned car, with the windows rolled up, for fifteen minutes when outside temperatures exceeded 90 degrees Fahrenheit.  Officers then ignored Plaintiffs literally banging their heads on the car windows to draw attention to the heat inside the car.  These allegations permit a reasonable inference that the officers' conduct was objectively unreasonable.

In arguing otherwise, Defendants stray from the 12(b)(6) standard, reframing and overlooking pertinent alleged facts (in their analysis, "hot" becomes "warm" and preexisting conditions are ignored), and relying on factually and procedurally inapt cases.[6]  *Compare Sims v. Olszewski*, No. 17 C 0079, 2017 WL 1903121, at *5-6 (N.D. Ill. May 9, 2017) (denying motion to dismiss for failure to state a claim where pretrial detainee plaintiff alleged that he told defendants

---

[6] For example, although the Seventh Circuit has, as Defendants note, observed that "90 [degrees Fahrenheit] is hot, but . . . not disabling," the court expressly referred to the temperature of a ventilated vehicle on a nearly 90-degree day, *Gideon v. Flynn*, 830 F.3d 719, 721 (7th Cir. 2016), not the potentially much higher temperature of a *car that was neither ventilated nor air-conditioned* in 90-degree heat, as Plaintiffs here allege.  Defendants also rely upon cases with more developed records, like *Chagolla v. City of Chi.*, No. 07 C 4557, 2012 WL 403920, at *3 (N.D. Ill. Feb. 8, 2012) (summary-judgment stage).

that he was in wet undergarments and ill-fitting lightweight clothing and was extremely cold and losing feeling in his feet, but that officers made him shuffle through slushy ice water with outside temperatures below 0 degrees Fahrenheit, and refused to turn on the heat until just before arriving at the police station, where he was placed in a cold cell), *with Stainback*, 569 F.3d at 773 (affirming summary judgment because the arresting officers' actions were reasonable where the record did not indicate that they knew of infirmities but only that the arrestee did not want to be handcuffed due to a fear of pain and made only general complaints after being handcuffed); *Sides*, 496 F.3d at 828 (holding on summary judgment that officers' behavior in having detainee who refused to answer their questions stand against a running car in 90-degree weather in an asphalt parking lot for about an hour, despite his complaints of feeling dizzy and dehydrated, was not objectively unreasonable because the officers would not have perceived a need for medical attention under the circumstances); *Kapernekas*, 2019 WL 1543261, at *4-5 (holding at summary-judgment stage that it was not unreasonable to detain 85-year-old man, handcuffed, in squad car, with a window open and the air conditioning on, for less than 15 minutes, where the officers did not know his age or relevant health conditions). Accordingly, Defendants' motion is denied on this ground.

## CONCLUSION

Defendants' motion to dismiss the complaint [17] is denied in its entirety. Defendants shall answer the complaint by 3/31/2023. The parties are directed to confer no later than 3/28/2023 to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, and they shall also discuss deadlines for any Rule 26(a)(1) disclosures that have not already been exchanged and a proposed discovery plan. Plaintiff is responsible for initiating such a conference, and all lead counsel for all parties must participate. In lieu of an initial status hearing, the parties shall file a joint written initial status report and proposed discovery plan by 4/3/2023. Failure or refusal to participate in such a conference or to cooperate in the preparation of the written report may constitute a basis for sanctions. After the Court receives the parties' written report, it will issue an order setting a discovery schedule.

**DATE:** March 10, 2023

**Hon. Ronald A. Guzmán**
**United States District Judge**